UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JACQUELINE HERD-BARBER and JANET JASTREMSKI, <br><br> Plaintiffs, <br><br> v. <br><br> FREESCALE SEMICONDUCTOR, INC., <br><br> Defendant. | Case No. 09-CV-535-JPS <br><br><br> ORDER |

In this action, the plaintiffs, two former employees of the defendant Freescale Semiconductor, Inc. ("Freescale"), allege that Freescale engaged in unlawful discrimination against them, depriving them of equal pay, and eventually terminating their employment on the basis of their gender and age. (*See* Docket #1). Freescale filed a motion for summary judgment in this action on December 16, 2011. (Docket #34). Having now—after several delays—received the parties' briefs on the issues, along with several accompanying motions to seal the documents filed, the Court is prepared to issue its decision on Freescale's motion. Simultaneous to issuing that decision, the Court will grant the parties' motions to seal the documents. (Docket #34, #47, #57). However, in keeping with the Seventh Circuit's view that "[w]hat happens in the federal courts is presumptively open to public scrutiny," and given that this decision and order avoids disclosure of sensitive information, there is no reason to suggest that it be filed under seal. *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348–49 (7th Cir. 2006).

1. Factual Background

The defendant, Freescale, is a publicly-traded company that manufactures semiconductors. (Joint Stmt. Facts ¶ 4). Formerly a part of Motorola, Inc., Freescale separated from Motorola in 2004, but continued to provide cellular technology to Motorola and other companies in addition to its primary function as a semiconductor manufacturer. (Joint Stmt. Fact ¶ 3; DPFF ¶ 98).

However, due to declining revenue, in 2008 Freescale decided to end its cellular technology operations. (DPFF ¶ 99). As a result of the declining revenue, the Global Sales and Marketing division ("GSM") of Freescale received instructions to reduce their costs. (DPFF ¶ 100). In response to those instructions, Pete Zakoian ("Zakoian"), the Director of Sales for Freescale's Central Region, began a process of review to determine how to adequately reduce costs. (DPFF ¶¶ 20, 101; PPFF ¶ 1).

Ultimately, Zakoian decided to initiate a reduction in force ("RIF") of Freescale's Central Region staff. (DPFF ¶¶ 101–03). Zakoian eventually terminated a number of its sales engineers as part of that RIF, including both men and women who were also of diverse age range, having been born in years spanning from 1949 through 1976. (DPFF ¶ 103).

The plaintiffs, Jacqueline Herd-Barber ("Herd-Barber") and Janet Jastremski ("Jastremski"), are former sales engineers of Freescale, and were included in the RIF. (*See* Joint Stmt. Facts ¶¶ 9, 10, 15; DPFF ¶ 103).

Herd-Barber, born in 1960, was employed as a Sales Engineer IV—the highest level of Sales Engineer positions at Freescale—and had worked at Freescale for approximately 25 years. (Joint Stmt. Facts ¶ 10; DPFF ¶ 68). She

is an engineer, having received a Bachelor of Science degree in Electrical Engineering. (PPFF ¶ 32).

During her employment as a Sales Engineer IV, Herd-Barber worked primarily on "Tier 2" and "Tier 3" accounts, which were smaller accounts than Freescale's "Tier 1" accounts. (*See* DPFF ¶ 18 (denied by plaintiffs, but the denial does not find support in record evidence; in deposition, Herd-Barber responded "No," when asked whether she worked any Tier 1 accounts, *see* Ex. 1, 201:10–24, 202: 14–21)). GE was one of Herd-Barber's larger clients; however, due to a potential conflict of interest arising as a result of her husband's taking an executive role there, Herd-Barber decided that she should be taken off the GE account. (DPFF ¶¶ 14, 16; PPFF ¶¶ 42, 44, 45).

During her employment, Herd-Barber received mixed performance reviews, sometimes indicating difficulty in communicating with clients (DPFF ¶¶ 1–3, 5, 7–11), but often receiving positive reviews, particularly in the later years of her employment (PPFF ¶¶ 41–46). Herd-Barber also occasionally needed the assistance of a Field Applications Engineer ("FAE") to assist her in the analysis or explanation of more complex technologies needed by customers. (PPFF ¶ 37).

In the end, Herd-Barber was included in the RIF and her employment with Freescale was terminated. Her former clients were taken over primarily by Terry Schaul and Michael Robinson, two male Sales Engineers at levels III and IV, respectively. (DPFF ¶ 106 (denied by plaintiffs, but the denial cites only to unrelated proposed findings of fact, none of which provide the Court with ample reason to find this fact in dispute); PPFF ¶¶ 90, 91).

Jastremski, born in 1956 and also included in the RIF, served as a Sales Engineer III during her nearly-25-year tenure at Freescale. (Joint Stmt. Facts ¶ 15; DPFF ¶¶ 23, 69; PPFF ¶ 5). Unlike Herd-Barber, Jastremski is not an engineer. (DPFF ¶ 69). Due to her lack of an engineering degree, Jastremski often worked with an FAE who would present the technical aspects of Jastremski's proposals, given Jastremski's unfamiliarity with such information. (*See, e.g.*, DPFF ¶¶ 26, 28, 29, 31, 32, 34; *see also* PPFF ¶¶ 10–14). Jastremski often worked with lower-tier clients or clients with declining business. (*See, e.g.*, DPFF ¶¶ 27, 30; *see also* PPFF ¶¶ 10–14). Similarly to Herd-Barber, Jastremski received somewhat mixed performance reviews, often receiving some criticism for lack of technical expertise, but receiving otherwise positive reviews. (PPFF ¶¶ 14–27 and defendant's responses).

Unfortunately, also similarly to Herd-Barber, Jastremski was included in the RIF and her position was terminated.

Thus, Jastremski and Herd-Barber have brought this action against Freescale, alleging that they were both terminated and received unequal pay prior to that termination as a result of gender and/or age discrimination. (Docket #24). Freescale filed a motion for summary judgment on these claims, and the parties have now fully briefed the Court on that motion. (Docket #36, #51, #58).

2.  Summary Judgment Standard

Summary judgment is proper when the record establishes that there are no "genuine issue[s] of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists when a rational factfinder could find in favor of the non-

moving party; in making this determination, the Court must construe all facts in a light most favorable to the nonmoving party and draw any reasonable inferences in the nonmoving party's favor, as well. *Ricci v. DeStefano*, -- U.S. ---, 129 S.Ct. 2658, 2677, 174 L.Ed. 2d 490 (2009); *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). However, a mere scintilla of evidence is insufficient to create such a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

3. Discussion

The plaintiffs make several claims against Freescale, each of which the Court will address separately. First, the Court will examine the plaintiffs' claim that Freescale violated the Equal Pay Act (EPA) by improperly underpaying its female employees as a result of their gender. (Am. Compl. ¶¶ 68–70). Next, the Court will address the plaintiffs' argument that they were improperly discharged as a result of age discrimination under the Age Discrimination in Employment Act (ADEA). (Am. Compl. ¶¶ 74–76). Finally, the Court will turn to the plaintiffs' dual Title VII claims, in which the plaintiffs argue that they were both under-compensated and discharged as a result of improper gender discrimination in violation of Title VII. (Am. Compl. ¶¶ 71–73).

3.1 Evidentiary Issues

In its reply brief, Freescale raises objections to Exhibits F, L, N, and O. (Def.'s Reply 2–5). As to Exhibit F, consisting of notes from an Equal Employment Opportunity Commission investigator, Freescale argues that the Court should find it inadmissible as hearsay. (Def.'s Reply 2). Freescale also argues that the Court should find Exhibits L, N, and O—summaries of

the salaries of a number of Freescale's employees (Exhibit L) and explanations for differences in those salaries (Exhibit N and O)—inadmissible as reliant on hearsay, inaccurate, argumentative, and lacking foundation. (Def.'s Reply 3–5).

While these problems are very serious and raise the potential for improper prejudice when submitted to a factfinder, the Court will not bar the exhibits at this time. Specifically, with the flawed and argumentative summaries found in Exhibits L, N, and O, the Court will take the contents with a hefty dose of salt. However, given that this litigation is not yet before a jury, the Court finds it best to take these objections under advisement and to simply accord them limited weight at this point. The Court is able to separate the wheat from the chaff in these exhibits, and will accord them appropriate weight in making its decision on Freescale's motion for summary judgment.

### 3.2 Equal Pay Act Claims

In an EPA case, the plaintiff must show a *prima facie* case of wage discrimination; if the plaintiff is able to make that showing, the burden shifts to the defendant to show that any male-female pay differential is a result of factors unrelated to gender. 29 U.S.C. § 206(d)(1); 29 C.F.R. § 1620.14, *Cullen v. Ind. Univ. Bd. of Trustees*, 338 F.3d 693, 698–99 (7th Cir. 2003) (citing *Fallon v. Illinois*, 882 F.2d 1206, 1209 (7th Cir. 1989), *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973–976 (7th Cir. 2000)).

"To establish a *prima facie* case of wage discrimination under the EPA, [Herd-Barber and Jastremski] must show: '(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort

and responsibilities, and (3) the work was performed under similar working conditions." *Cullen*, 338 F.3d at 698–99 (citing *Fallon*, 882 F.2d at 1209).

The plaintiffs have established the first prong—the "wage" prong—of their *prima facie* wage discrimination case. While Freescale is correct that a number of male employees earned less than the plaintiffs, the plain truth is that "higher wages were paid to" a significant number of male employees—twelve of thirteen employees at the Sales Engineer III level were paid more than Jastremski, while eleven of fourteen employees at the Sales Engineer IV level were paid more than Herd-Barber—thus satisfying the first prong of a *prima facie* case of wage discrimination under the EPA. (PPFF ¶¶ 1, 86–87 (the facts of which have been admitted by Freescale subject to an objection to Exhibit L, upon which the statements are based), 89–92, DPFF ¶¶ 68, 72–73, 77, 80–82, 87, 90, 91); *Cullen*, 338 F.3d at 698, 29 U.S.C. § 206(d)(1), 29 C.F.R. § 1620.14.

On the other hand, the plaintiffs have failed to establish the second prong of a *prima facie* wage discrimination case—the "equal work" prong. Due to substantial differences between the jobs held by the plaintiffs and the jobs held by the other employees of Freescale, the Court is unable to find that Herd-Barber and Jastremski performed "equal work requiring substantially similar skill, effort, and responsibilities."

"The crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical." *Fallon*, 882 F.2d at 1209 (quoting *Brewster v. Barnes*, 788 F.2d 985, 991 (4th Cir. 1986), *Brobst v. Columbus Services Int'l*, 761 F.2d 148, 156 (3d Cir. 1985)). If the plaintiff can establish that a significant

portion—a "common core"—of the jobs being compared is identical, then the Court must inquire into whether one of the jobs requires additional tasks that would make the jobs "substantially different." *Fallon*, 882 F.2d at 1209 (citing *Brewster*, 788 F.2d at 991).

In addition to the common core finding, the Court should consider whether the common core of work required substantially similar skills (including such factors as experience, training, education, and ability), effort and responsibilities. *See, e.g.*, 29 C.F.R. § 1620.15(a), *Cullen*, 338 F.3d at 698–99, *Fallon*, 882 F.2d at 1209, *Sims-Fingers v. City of Indianapolis*, 493 F.3d 768, 772 (7th Cir. 2007).

While the jobs held by Jastremski and Herd-Barber may have shared a common core of tasks with the jobs held by Freescale's male employees, there were substantial differences between required skills, effort, and responsibilities, such that the plaintiffs cannot establish the equal work prong. On a general level, Jastremski and Herd-Barber performed sales tasks that were similar in many ways to Freescale's male employees—Jastremski and Herd-Barber met with clients, both current and potential, in efforts to ascertain and serve their needs; Freescale's male employees did the same. These similar sales tasks even required similar skills, such as the ability to be personable with clients and knowledgeable of Freescale's products and capabilities.

However, the effort and responsibilities of each sales engineer differed substantially to a point that the Court cannot find that the plaintiffs performed equal work to Freescale's male employees. In fact, whether at Level III or Level IV, each sales engineer served different clients of different

Page 8 of 18

sizes, in different phases of their business, each of which were in different locations, with differing needs from the sales engineers in charge of each business' different accounts. While the plaintiffs simply argue that "[n]one of the evidence in this case indicates any difference in required effort" between employees at the Sales Engineer III and Sales Engineer IV positions, respectively (Pl.'s Resp. 7), the Court strongly disagrees. In fact, the evidence in this case demonstrates that each employee served unique customers with unique needs. (DPFF ¶¶ 53–54 (denied by plaintiffs with general reference to PPFF ¶¶ 3, 50–92, none of which rebut the plaintiffs' contention that Freescale's compensation of its sales employees was based upon a number of factors including skill, effort, responsibility, education, length of employment, market conditions, customer responsibility, geographic location, performance, background, experience, and contacts with industry members and customers); *see, e.g.*, DPFF ¶¶ 14, 16, 18, 27, 30, PPFF ¶¶ 42–45 (establishing that Herd-Barber and Jastremski each had clients for which they were individually responsible, for which no other Freescale employee was responsible, and which differed in size from clients managed by other Freescale employees); *see also* PPFF ¶¶ 55–57, 61 (establishing the fluid nature of any difference between Sales Engineer III and Sales Engineer IV employees, based upon the size and number of accounts held by employees; these facts go to the Court's conclusion that each employee served different numbers of clients, each with different needs)). As such, the Court finds that the plaintiffs have failed to satisfy the equal work prong of a *prima facie* wage discrimination case.

Finally, even if the equal work prong of plaintiffs' *prima facie* wage discrimination case were satisfied, the plaintiffs have also failed to satisfy the third, "similar conditions," prong of such *prima facie* showing. As the plaintiffs have acknowledged, Freescale's sales engineers work in many locations across the country. (*See, e.g.*, DPFF ¶¶ 65, 86, 88 (admitted by plaintiffs as to fact that Freescale employed sales engineers in Colorado, Utah, and Michigan)). The plaintiffs admit that Freescale employed sales engineers in Asia, yet asks the Court to disregard any salary differential between male sales engineers in Asia on one hand, and Jastremski and Herd-Barber on the other. (*See, e.g.*, Pl.'s Resp. 5 ("of 13 male Sales III employees outside Asia," "Eleven of the 14 male Sales IV employees outside Asia")). Implicit in asking the Court to disregard that locational salary differential is an understanding by the plaintiffs that conditions such as location play a role in Freescale's salary determinations. Simply put, the Court cannot make an adequate comparison between sales engineers when those engineers are dispersed across the country and the globe working in disparate conditions. Thus, the Court finds that the plaintiffs have failed to satisfy the similar conditions prong of their *prima facie* wage discrimination case.

The Seventh Circuit has stated that the EPA is generally appropriate for more standardized jobs, requiring roughly equivalent effort in roughly equivalent circumstances. *Sims-Fingers*, 493 F.3d at 771 (finding that *prima facie* case was not established where park managers being compared worked at parks of differing sizes; the court found that a more appropriate example of properly comparable positions would be two teaching positions with

similar credentials, managing similarly-sized classrooms, in roughly similar schools in the same school district). That standard is simply not satisfied here, where there was no standardization of the effort, responsibility, or circumstances in which Freescale's employees performed.

Accordingly, because the plaintiffs are unable to establish similarity or any level of standardization between the effort, responsibility, and circumstances of Freescale's sales engineers, the plaintiffs cannot satisfy all three prongs of their *prima facie* wage discrimination case, and their claim under the EPA fails. As such, the Court will grant Freescale's motion to dismiss on this portion of the plaintiffs' claims.

### 3.3 Title VII Claims

The plaintiffs concede that they cannot prevail on their Title VII claims (Pl.'s Resp. 21) and, therefore, the Court will also grant Freescale's motion for summary judgment on that portion of the plaintiffs' claims.

### 3.4 Age Discrimination in Employment Act Claims

In cases alleging age discrimination under the ADEA, if plaintiffs can show a *prima facie* case of age discrimination, then the burden shifts to defendant to rebut a presumption that age discrimination occurred. To rebut that presumption, the defendant can allege any legitimate reasons for differing treatment of employees of different ages. The plaintiff then has the opportunity to show that those reasons are mere pretexts for discrimination, and, if able to do so, are entitled to a judgment in their favor.

#### 3.4.1 *Prima Facie* Case

Attempting to establish age discrimination under the ADEA, the plaintiffs use the indirect, "burden-shifting" analysis employed by the

Seventh Circuit. *See Olson v. Northern FS, Inc.*, 387 F.3d 632, 635 (citing *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 676 (7th Cir. 2002)). To establish a *prima facie* case under this indirect method, the plaintiffs must show that: (1) they were members of a protected class—in this case, individuals over the age of forty; (2) they were meeting Freescale's legitimate job expectations; (3) they suffered some adverse employment action; and (4) similarly-situated employees not in the protected class—in this case, individuals under the age of forty—were treated more favorably. *Koski*, 307 F.3d at 676 (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

Here, the plaintiffs have failed to establish a *prima facie* case of age discrimination under the indirect method. While they have satisfied the first and third factors by clearly establishing that they are over the age of forty and subject to the adverse employment action of being included in Freescale's RIF (DPFF ¶ 103), the plaintiffs have not established the second or fourth factors required to make a *prima facie* showing of age discrimination under the indirect method.

As to the second factor, the defendants argue that Herd-Barber and Jastremski failed to meet Freescale's legitimate job expectations. The Court agrees. Throughout their careers, Herd-Barber and Jastremski received negative feedback as a result of difficulties with maintaining professional relationships and mastering technical aspects of the job, respectively. (DPFF ¶¶ 1–3, 5, 7–11 (detailing Herd-Barber's difficulties), *but see* PPFF ¶¶ 41–46 (detailing Herd-Barber's generally favorable reviews); PPFF ¶¶ 14–27 and defendant's responses (detailing Jastremski's mixed performance reviews)). Of course, as plaintiffs argue and are correct in recounting, Jastremski and

Herd-Barber were each retained for more than twenty years, and thus clearly met Freescale's legitimate expectations for that period. However, as the market changed over time, it became necessary for Freescale to reduce its sales workforce and, if Jastremski and Herd-Barber failed to live up to Freescale's expectations when compared to other workers, the Court sees no reason that they should not have been included in the RIF.

Nonetheless, construing the facts in the light most favorable to Jastremski and Herd-Barber, as the Court must do at the summary judgment stage, the Court finds there is at least some issue as to whether the plaintiffs satisfied the second factor by meeting Freescale's legitimate expectations.

However, even construing the facts in the light most favorable to the plaintiffs, Jastremski and Herd-Barber still cannot establish the fourth factor. As the Supreme Court has noted, "there must be at least a logical connection between each element of the *prima facie* case and the illegal discrimination" that is alleged. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311–312 (1996) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, n. 7 (1981)). Thus, the Supreme Court stated that "very thin" evidence, such as the replacement of a 68-year-old employee with a 65-year-old employee should not automatically establish an element of the *prima facie* case for age discrimination. *O'Connor*, 517 U.S. at 312 (citing *Teamsters v. United States*, 431 U.S. 324, 358 (1977)). Instead, to satisfy an element of the *prima facie* case, the plaintiff must present "'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.'" *O'Connor*, 517 U.S. at 312 (alterations in original) (quoting *Teamsters*, 431 U.S. at 358).

Here, while the plaintiffs produced evidence that they were over the age of forty and included in the RIF while some employees under the age of forty were not, that fact alone is not sufficient to establish the fourth factor of their *prima facie* age discrimination case. Contrary to the plaintiffs' assertion, the fourth factor of the *prima facie* case is not satisfied by showing the mere inclusion of some employees over the age of forty in a RIF accompanied by the non-inclusion of some employees under the age of forty. Rather, as noted above, the evidence presented must be probative of an illegally discriminatory criterion, in order to satisfy the fourth factor of the *prima facie* case. *O'Connor*, 517 U.S. at 312 (citing *Burdine*, 450 U.S. at 254, n. 7, *Teamsters*, 431 U.S. at 358).

The evidence presented by Freescale is not probative of such an illegal use of age as a discriminatory criterion. Here, Freescale included at least two individuals under the age of forty—and thus not members of a protected class—in their RIF. (DPFF ¶ 103 (identifying Andy Chong Fatt The and Ming Zahn, both born in 1976, as having been included in the RIF)). Furthermore, Freescale retained a very significant number of individuals over the age of forty after the RIF. (*See* Ex. L).[1] In fact, the average age of Freescale's sales

---

[1] Exhibit L identifies the following individuals over the age of forty not subject to RIF: Chuck Dewitt, Mike Duffy, Darren Hintze, Rob Kein, Kathy Paddock, Gary Prelesnik, Terry Schaul, Luis Verduzco, Steve Vondrak, Matthew Clemens, Dominique Guicharnaud, Chuck Modica, Mike Robinson, Mario Ahumada, Donald Brown, Steve Medearis, Keith Orlebeck, Joe Bastulli, Anna Fricker, and Ron Willhide.

Of those individuals, the following are, in fact, within one year of or older than both plaintiffs yet not subject to RIF: Kathy Paddock, Russ Miller, Donald Brown, Steve Medearis, Anna Fricker, and Ron Willhide.

force dropped less than one year after the RIF (from an average age of 41.67 before the RIF to an average age of 40.75 afterwards). While the plaintiffs argue that this fact is irrelevant, the Court disagrees and finds it very probative of a lack of the illegal use of age as a discriminatory criterion—had Freescale intended to rid itself of its older workers, such a result should be seen across its workforce, as opposed to on an isolated level found in comparison between the plaintiffs and retained individuals under forty. (DPFF ¶ 107 and plaintiffs' response). Examining these facts, the Court is obliged to find that the plaintiffs have failed to produce evidence probative of Freescale's illegal use of age as a discriminatory criterion in their decision to include Herd-Barber and Jastremski in the RIF.

As such, the Court finds that the plaintiffs have failed to establish a *prima facie* case of age discrimination under the ADEA, and thus it should grant the defendants' motion for summary judgment on this claim.

### 3.4.2 Alleged Legitimate Reasons for Differing Treatment

Going further, though, the Court also finds that the plaintiffs' ADEA claim fails because Freescale has produced a legitimate reason for their differing treatment of the plaintiffs that is not a pretense for discrimination. As the plaintiffs point out in their brief, Courts should attempt to avoid conflation of parts of the *prima facie* case with alleged reasons for differing treatment. (Pl.'s Resp. 23–24 (citing *Lewis v. Johnson Controls, Inc.*, 1997 WL 790597 (N.D. Ill. Dec. 18 1997), *Fortier v. Ameritech Mobile Comms., Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998))).

Thus, while it may seem paradoxical, the Court can justly find that Herd-Barber's and Jastremski's under-performance on their reviews, while

not rising to a failure to meet Freescale's legitimate expectations, *did* in fact rise to the level of a non-pretextual, legitimate reason for their differing treatment. As noted above, as the market shifted, it became necessary for Freescale to lay off a number of its workers. Unfortunately, Jastremski and Herd-Barber were included in that number. Freescale argues that Jastremski was included due to her lack of technical expertise and past mixed performance reviews; it alleges that Herd-Barber was included due to her choice to be removed from the GE account and her past mixed performance reviews. (Def.'s Br. in Supp. 18–19). While the plaintiffs may have satisfied Freescale's legitimate expectations, Freescale also had legitimate reasons for including them in the necessary sales-force-wide RIF.

Contrary to the plaintiffs' argument, those reasons are not mere pretext. Jastremski was not an engineer and regularly needed the assistance of an FAE. (*See, e.g.*, DPFF ¶¶ 26, 28, 29, 31, 32, 34; *see also* PPFF ¶¶ 10–14). Even though she may have performed her duties without such a degree and with the assistance of an FAE for over twenty years, it is perfectly logical that Freescale would wish to keep the "cream of the crop" (those self-sufficient and holding engineering degrees) and reduce its FAE costs at a time of financial difficulty. Similarly, Herd-Barber's refusal to service GE's account provides a perfectly logical reason for her inclusion in the RIF—at a time of financial difficulty, Freescale would want to keep its employees who were able to service all of their assigned and valuable clients. Herd-Barber's refusal to do so, which necessitated another employee's assumption of that account, is not a pretext, but logical and valid business practice. And, finally, as noted above, if Jastremski's and Herd-Barber's performance reviews were below

the levels of other employees—and not merely satisfactory, which is all that the plaintiffs have shown in their attempts to rebut Freescale's contention that it legitimately included the plaintiffs in the RIF due to mixed performance—then Freescale legitimately included them in the RIF.

Freescale should not be required to retain underperforming employees who require extra assistance and financial outlay (Jastremski's FAE needs) or who choose to diminish their own value by refusing to work certain accounts (Herd-Barber's refusal to service the GE account), when Freescale has other employees performing better without such problems.

For this reason, the Court finds it clear that the defendant is entitled to summary judgment on the plaintiffs' ADEA claims.

4. Conclusion

The Court sympathizes with Jastremski and Herd-Barber—it is undoubtedly extremely difficult to be laid off from a position in which one has been employed for the majority of her professional career. Add to that the fact that both have been placed on the job market in an uncertain and difficult time in our nation's economy.

But, Freescale should not be penalized for making valid business decisions throughout the course of the plaintiffs' employment, including termination. As unfortunate as the plaintiffs' situations are, the Court cannot find that Freescale violated any laws in its treatment of the plaintiffs.

Accordingly,

IT IS ORDERED that the defendant's Motion for Summary Judgment (Docket #35) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the parties' motions to seal documents (Docket #34, #47, #57), having not been the subject of any objection, be and the same are hereby GRANTED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED on its merits together with costs as taxed by the Clerk of the Court.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of March, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge